UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA LYNNE MURPHY,<br><br>          Plaintiff,<br><br>     v.<br><br>THE BANK OF NEW YORK MELLON, et al.,<br><br>          Defendants. | Case No. 13-cv-02820-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE**<br><br>Re: ECF No. 5 |

In this action for claims arising out of the initiation of foreclosure proceedings on a residential property, Plaintiff Theresa Murphy moves for a preliminary injunction barring Defendants from taking further actions to foreclose on the property. Because Murphy fails to show that she is likely to succeed on the merits, the motion is DENIED. Additionally, because it appears that the Court lacks subject matter jurisdiction over this action, Murphy must show cause why this action should not be dismissed for lack of subject matter jurisdiction.

## I.     BACKGROUND

### A.     Murphy's Claims

Murphy brings this action against Defendants the Bank of New York Mellon, Mortgage Electronic Registration Systems ("MERS"), Merscorp Holdings, and The Wolf Firm for (1) violations of 18 U.S.C. § 1001; (2) violations of 18 U.S.C. § 1341; (3) violations of the Fair Debt Collection Practices Act ("FDCPA"); (4) violations of California's Business and Professions Code Section 17200; (5) slander of title; (6) cancellation of void instruments; (7) quiet title; and (8) wrongful foreclosure. Compl., ECF No. 1.

The gravamen of the complaint is that Defendants lack the authority to execute any foreclosure proceedings with respect to a residential property occupied by Murphy, which is located at 11 High Street, Unit No. 201, in San Francisco, California ("the property"). Compl. ¶ 1.

**B. Prior Litigation as to the Property**

In October 2006, Murphy filed an action in state court against Clyde Nathan Smith for breach of contract and specific performance.[1] Request for Judicial Notice ("RJN"), Ex. 1, ECF No. 15.[2] In the complaint, Murphy alleged that she entered into an oral agreement with Smith in November 2005 to "cooperate on the purchase of two parcels of residential property," one of which is the property at issue in this case. Id. ¶ 7. Under the terms of this agreement, Smith would purchase both parcels through a mortgage loan and Murphy would pay the down payment and closing costs pertaining to the property. Id. ¶ 8. After the close of escrow on the two parcels, Smith would convey his interest in the property to Murphy via a quit-claim deed "without any further payment or consideration" to Smith. Id. ¶ 9. Murphy would then be responsible for paying the mortgage payments on the property. Id. ¶ 10.

The recorded instruments filed by Defendants show that (1) Smith acquired the property on December 16, 2005, via grant deed, which was recorded on December 29, 2005, as document number 2005-I102706-00, RJN, Ex. 2, ECF No. 15; (2) Smith executed a deed of trust ("the first deed of trust") with lender PRO30 Funding on December 19, 2005, to secure a $833,250 loan with the property, RJN, Ex. 3, ECF No. 15;[3] (3) Smith executed a second deed of trust ("the second deed of trust") with lender PRO30 Funding on December 21, 2005, to secure a $222,200 loan with the property, RJN, Ex. 4, ECF No. 15.[4]

//

---

[1] The case number of this action is 06-457063.

[2] The Court takes judicial notice of the court documents and recorded instruments filed by Defendants because such documents are directly related to the claims at issue in this action. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (holding that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Murphy's objections to the Court's consideration of these documents on the ground that the documents are irrelevant to this action, ECF No. 21, are overruled.

[3] In the first deed of trust, Smith was the borrower, Pro30 Funding was the lender, Fidelity National Title Company was the trustee, and MERS was the beneficiary. RJN, Ex. 3. The instrument was recorded on December 29, 2005, as document number 2005-I102707-00. Id.

[4] In the second deed of trust, Smith was the borrower, Pro30 was the lender, Fidelity National Title Company was the trustee, and MERS was the beneficiary. RJN, Ex. 4. The instrument was recorded on December 29, 2005, as document number 2005-I102708-00. Id.

As of October 18, 2006, Smith had not conveyed the property to Murphy. RJN, Ex. 1, ECF No. 15. Murphy dismissed the action against Smith without prejudice on September 18, 2007. RJN, Ex. 5, ECF No. 15.

Murphy filed a second action ("the second action") against Smith in state court on September 10, 2007, for an order declaring her the owner of the property on the basis that Smith conveyed the property to her when he gave her possession of the property on December 23, 2005. RJN, Ex. 6 at 5, ECF No. 15.[5]

On January 8, 2008, the state court entered default judgment in favor of Murphy and against Smith and declared that fee simple title to the property passed to Murphy on December 29, 2005. RJN, Ex. 7, ECF No. 15. The court directed the clerk to sign a grant deed conveying the property from Smith to Murphy. Id. This court-ordered grant deed was recorded on January 9, 2008, as document number 2008-I516250-00. RJN, Ex. 8, ECF No. 15.

The default judgment of January 8, 2008, was amended by another state court judge on February 11, 2008. RJN, Ex. 9, ECF No. 15. The amended judgment stated that Murphy's fee simple title in the property was "free from encumbrances done, made, or suffered by [Smith] or any person claiming under him." Id. The revised grant deed was recorded on February 11, 2008, as document number 2008-I534311-00. RJN, Ex. 10 at 2, ECF No. 15.

Approximately two years later, on July 30, 2010, the state court judge who entered the amended default judgment vacated it on the ground that several parties who were affected by the default judgment, including MERS, were not served with the complaint filed in the second action. RJN, Ex. 10, ECF No. 15. The minutes of the hearing suggest that the state court judge who vacated the amended default judgment intended the vacatur to result in the reversion to the default judgment entered on January 8, 2008. Tr. at 17, ECF No. 6.

Murphy filed a third action in state court to quiet title to the property on March 17, 2011. RJN, Ex. 11, ECF No. 15. The complaint named as defendants the Bank of New York Mellon, MERS, Pro30 Funding, J.P Morgan Chase Bank, Bank of America, and the San Francisco County Assessor. Id. Murphy's claims were premised on the validity of the default judgment entered on

---

[5] The case number of this action is 07-467019.

3

January 8, 2008, and on the theory that her interest in the property was "perfected as an unrecorded owner in possession of the property on December 23, 2005, prior to the recordation of the first deed of trust on December 29, 2005." Id. ¶ 7. In its answer to the complaint, which was filed on September 6, 2011, the Bank of New York Mellon disclaimed any interest in property. RJN, Ex. 12, ECF No. 15. On January 25, 2012, the state court entered judgment quieting title with respect to the property in favor of Murphy and against Bank of America and the Bank of New York Mellon "as trustee for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Sterns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2." RJN, Ex. 13, ECF No. 15.

On October 10, 2012, MERS granted its entire interest in the first deed of trust through a corporate assignment to the Bank of New York Mellon "f/k/a The Bank of New York, as successor in interest to JP Morgan Chase Bank, N.A., as Trustee for Bear Sterns Asset Backed Securities, Bear Sterns Alt-A Trust, Mortgage Pass-Through Certificate Series 2006-2." RJN, Ex. 14, ECF No. 15. This assignment, which resulted in the Bank of New York Mellon becoming the new beneficiary of the first deed of trust, was recorded on December 26, 2012, as document number 2012-J571666-00. RJN, Ex. 14, ECF No. 15.

On January 28, 2013, the Bank of New York Mellon substituted The Wolf Firm as the new trustee of the first deed of trust. RJN, Ex. 15, ECF No. 15. This substitution was recorded on February 12, 2013, as document number 2013-J601828-00. Id. On February 12, 2013, The Wolf Firm recorded a notice of default and an election to sell the property under the first deed of trust as document number 2013-J601829-00 on the ground that the first deed of trust was $312,452.59 in arrears. RJN, Ex. 16, ECF No. 15.

**C.  Procedural History**

Murphy moved for an ex parte temporary restraining order and preliminary injunction barring Defendants from recording a notice of trustee's sale. ECF No. 2. The Court denied Murphy's motion for an ex parte temporary restraining order on June 20, 2013, on the ground that Murphy failed to show that she would suffer immediate and irreparable harm or that she gave proper notice to Defendants of her motion for ex parte relief. ECF No. 9. In the same order, the

Court set a hearing date for Murphy's motion for a preliminary injunction and permitted the parties to file a response in support or in opposition to Murphy's motion. Defendants and Murphy filed responsive briefs.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). All four elements of this test must be satisfied before the court can issue a preliminary injunction. Id.; Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (holding that Winter "requires the plaintiff to make a showing on all four prongs"). The Ninth Circuit has made clear that, after Winter, "to the extent [its] cases have suggested a lesser standard, they are no longer controlling, or even viable." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citation omitted). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. at 24 (citations and internal quotation marks omitted).

In determining whether to issue a preliminary injunction, a district court may consider hearsay and other evidence that would otherwise be inadmissible at trial. See Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir.1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

## III. DISCUSSION

Murphy moves for a preliminary injunction barring Defendants from recording a notice of trustee's sale with respect to the property and from selling the property at a trustee's sale. Mot., ECF No. 2. Each of the claims in the complaint is predicated on two theories: (1) that the first

deed of trust and all instruments premised on it are invalid; and (2) that the Bank of New York Mellon cannot claim an interest in the property because a judgment quieting title to the property was entered against the Bank in state court. As will be discussed below, these theories are unsound in light of the facts and authorities before the Court. Because Murphy fails to show that she is likely to succeed on the merits of any of her claims, her motion for a preliminary injunction must be denied.

Additionally, upon review of the claims asserted in the complaint, it appears that the Court lacks subject matter jurisdiction over this action, because each of the asserted federal claims fails as a matter of law. Accordingly, the Court orders Murphy to show cause why it should not dismiss this action for lack of subject matter jurisdiction.

**A.  Murphy Has Not Shown a Likelihood of Success on the Merits**

**1.  Murphy Has Not Shown that the First Deed of Trust is Invalid**

Murphy first argues that first deed of trust and all instruments predicated on it, including the notice of default executed and recorded by The Wolf Firm with respect to the property, are "invalid" because Pro30 Funding, the lender under the first deed of trust, is incapable of owning or conveying any interest in the property, as it was never incorporated under the laws of California and thus "never existed as a legal entity" in California. Mot. at 3; Reply at 5. Murphy cites no authority to support her argument. Under California law, "[a]n unincorporated association may, in its name, acquire, hold, manage, encumber, or transfer an interest in real or personal property." Cal. Corp. Code § 18105. In light of this authority, Murphy's argument is unavailing.

Murphy also argues that the first deed of trust is invalid because Smith was not the property's owner at the time he executed the deed. Murphy bases this argument on the state court's default judgment of January 8, 2008, which states that fee simple title to the property passed from Smith to Murphy on December 29, 2005. Reply at 7; RJN, Ex. 7, ECF No. 15.

While Murphy is correct that the state court conveyed to Murphy a fee simple title to the property via the default judgment it entered on January 8, 2008, the Court cannot conclude that that conveyance was free of the liens held by Defendants for two reasons.

First, the January 8, 2008, order stated that title passed to Murphy on December 29, 2005.

6

RJN, Ex. 7, ECF No. 15. The deeds of trust encumbering the property, however, were executed prior to that date, on December 19 and 21, 2005. See RJN, Ex. 3, 4, ECF No. 15; see also Cal. Civ. Code § 2922 (providing that a "mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property"); Cal. Civ. Code § 1217 (providing that an instrument is valid even if it is not recorded). It follows that, under the default judgment of January 8, 2008, Murphy gained title to the property after it had been encumbered by Smith.

Second, to the extent that Murphy contends that the January 8, 2008, order somehow invalidated the liens held by Defendants, the Court finds no support for this argument in the January 8, 2008, order, as that order neither contains language indicating that the transfer was free of encumbrances nor explains the effect of the order on third-party interests to the property. See RJN, Ex. 7, ECF No. 15. Notably, the state court later entered an amended judgment on February 11, 2008. RJN, Ex. 9, ECF No. 15. The only obvious revision of the January 8, 2008, judgment was the addition of a sentence stating that the January 8 title transfer was free of encumbrances. See id. This strongly suggests that that the order of January 8, 2008, did not transfer title to Murphy free of liens. The amended judgment of February 11 was subsequently vacated, however, when MERS filed suit to enforce its interest in the property. See RJN, Ex. 10, ECF No. 15 (order vacating February 11, 2010, amended judgment on July 30, 2010). The documents submitted by the parties do not make clear the effect that the vacatur of the amended judgment had on Murphy's title; but, even if Murphy is correct in arguing that the vacatur's effect was to restore the prior default judgment of January 8, 2008, see Reply at 8, this still would not show that the order of January 8, 2008, invalidated the liens created prior to December 29, 2005.

Murphy's contention that the liens were invalidated as a result of the January 8, 2008, transfer also is not supported by California state court decisions, which hold that, generally, encumbrances on a property survive the property's transfer. See, e.g., Nguyen v. Calhoun, 105 Cal. App. 4th 428, 438-39 (Cal. Ct. App. 2003) ("Real property is transferable even though the title is subject to a mortgage or deed of trust, but the transfer will not eliminate the existence of that encumbrance. Thus, the grantee takes title to the property subject to all deeds of trust and

7

other encumbrances, whether or not the deed so provides. This means that the property may be sold on foreclosure of that deed of trust if the debt is not paid, even though the property is no longer owned by the original debtor.") (citations omitted).

### 2. Murphy Has Not Shown that She Has Quieted Title to the Property with Respect to Defendant Bank of New York Mellon

Murphy argues that the judgment quieting title entered in state court against the Bank of New York Mellon precludes the Bank from asserting any interests in the property. This argument fails for two reasons.

First, the judgment at issue was entered against an entity that is different from the Defendant here. Compare RJN, Ex. 3, ECF No. 15 (entering judgment against the "Bank of New York Mellon, as Trustee for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2006-2") (emphasis added); with RJN, Ex. 13, ECF No. 15 (assigning interest to the first deed of trust to "The Bank of New York Mellon, f/k/a The Bank of New York, as successor-in-interest to JPMorgan Chase Bank, N.A., as Trustee for Bear Stearns Asset Backed Securities, Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-2") (emphasis added).

Second, even if Murphy could show that the two entitles "were in privity" at the time the judgment was entered, see Reply at 4, the judgment still would not preclude Defendant Bank of New York Mellon from asserting an interest in the property in this action, because the judgment was entered on January 25, 2012, which is before Defendant Bank of New York Mellon acquired an interest to the property in late 2012. See RJN, Ex. 13, ECF No. 15 (judgment quieting title); RJN, Ex. 14, ECF No. 15 (assigning interest to first deed of trust to Defendant Bank of New York Mellon on October 10, 2012).

//
//
//
//
//

**B.     The Court Appears to Lack Subject Matter Jurisdiction**

Murphy invokes federal question jurisdiction under 28 U.S.C. § 1331 in the complaint.[6] ECF No. 1.  Though Murphy asserts three federal claims against Defendants, each of these claims fails as a matter of law.

The first federal claim is for fraud in violation of 18 U.S.C. § 1001.  Compl. ¶¶ 40-41. Section 1001 is a criminal statute pertaining to the falsification of documents and the making of false statements in matters within the jurisdiction of the federal government.  See 18 U.S.C. § 1001(a).  The statute contains no private cause of action.  See Hammerlord v. City of San Diego, 11-cv-1564, 2012 WL 5388919, at *4 (S.D. Cal. Nov. 2, 2012) (dismissing claim brought in civil action under 18 U.S.C. § 1001 with prejudice "because the statute does not provide for a private cause of action").

The second claim is for forgery in violation of 18 U.S.C. § 1341.  Compl. ¶¶ 42-43. Section 1341 is a criminal statute pertaining to mail fraud.  It also does not contain a private cause of action.  Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522, 533 n.1 (9th Cir. 1987) (noting that "federal appellate courts hold that there is no private right of action for mail fraud under 18 U.S.C. § 1341").

The third claim is for violations of the FDCPA.[7]  Compl. ¶¶ 44-45.  The allegations in the complaint fail to state a claim for FDCPA violations for two reasons.

First, Murphy's allegations do not raise the reasonable inference that she is a "consumer" as defined by the FDCPA.  Indeed, the complaint is devoid of averments suggesting that Murphy owes a debt to any of the Defendants.  See 15 U.S.C. § 1692a ("The term 'consumer' means any

---

[6] The complaint could not invoke diversity jurisdiction under 28 U.S.C. § 1332 because diversity of citizenship does not exist, as Murphy is a citizen of Californian and at least one of the Defendants is a citizen of California.  See Compl. ¶ 8 (alleging that Defendant the Wolf Firm is California corporation with its principal place of business located in California); see also Lee v. Am. Nat. Ins. Co., 260 F.3d 997, 1004 (9th Cir. 2001) ("The diversity jurisdiction statute, as construed for nearly 200 years, requires that to bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant.").

[7] Murphy predicates Defendants' alleged violations of the FDCPA on 18 U.S.C. §§ 807, 812, and 813, which do not exist in the United States Code.  The FDCPA is codified at 15 U.S.C. 1601, et seq.

9

natural person obligated or allegedly obligated to pay any debt.").

Second, Murphy's allegations do not raise the reasonable inference that any of the Defendants has engaged in debt-collection activities as defined by the FDCPA. Rather, her allegations pertain to Defendants' efforts to foreclose on the property. Foreclosure-related activities do not constitute debt collection activities and therefore are not covered by the FDCPA.

> While the Ninth Circuit has not specifically addressed the issue of whether mortgagees and their assignees are 'debt collectors' and whether non-judicial foreclosure actions constitute debt collection under the FDCPA, other courts have addressed the issues. The Fifth Circuit has held that mortgagees and their beneficiaries are not debt collectors subject to the FDCPA. The legislative history of the FDCPA also supports the position that mortgagees and their assignees, including mortgage servicing companies, are not debt collectors under the FDCPA when the debts were not in default when taken for servicing . . . . In addition, numerous district courts, including several in the Ninth Circuit, have also held that the activity of foreclosing on [a] property pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA.

Diessner v. Mortg. Elec. Registration Sys., 618 F.Supp.2d 1184, 1188-89 (D. Ariz. 2009) (citations and internal quotation marks omitted); see also Nera v. Am. Home Mortg. Serv., Inc., No. C-09-2025 RMW, 2009 WL 2423109, at *4 (N.D. Cal. Aug. 5, 2009) (holding that "acts of foreclosing on a property pursuant to a deed of trust are not 'debt collection' within the meaning of the FDCPA").

Because each of the three federal claims in the complaint fails as matter of law, the federal claims are not sufficiently substantial to confer supplemental jurisdiction over Murphy's state law claims. See Hoeck v. City of Portland, 57 F.3d 781, 785 (9th Cir.1995) ("District courts have discretion to hear pendent state claims where there is a substantial federal claim arising out of a common nucleus of operative fact.") (citation omitted); Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 (1910) (holding that a federal claim does not confer subject matter jurisdiction when it is "obviously frivolous or plainly insubstantial"). Accordingly, Murphy shall, by August 12, 2013, show cause, in writing, why the Court should not dismiss this action for lack of subject matter jurisdiction.

//

//

## IV. CONCLUSION

Murphy's motion for a preliminary injunction is DENIED. By August 12, 2013, Murphy shall file a response to the Court's order to show cause why this action should not be dismissed for lack of subject matter jurisdiction, as described in the previous section.

**IT IS SO ORDERED**.

Dated: July 11, 2013

_____
JON S. TIGAR
United States District Judge